2010-02798
FILED
December 13, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0003136333

JUSTIN T. RYAN (SBN 261672)
LAW OFFICES OF JUSTIN T. RYAN
2534 State Street, Suite 409
San Diego, California 92101
Telephone No.: (619) 822-2533
Facsimile No.: (619) 923-2543

Attorney for Plaintiff
HERITAGE PACIFIC FINANCIAL LLC.

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
### SACRAMENTO DIVISIONAL OFFICE

| | |
|---|---|
| In Re: | Chapter 7 |
| | Bankruptcy No. : 2:10-bk-47133 |
| ERIC V. AND JESSICA L. BEELARD | Adversary Case No.: |
| Debtor. | |
| HERITAGE PACIFIC FINANCIAL, LLC. D/B/A HERITAGE PACIFIC FINANCIAL, a Texas Limited Liability Company, | **PLAINTIFF'S COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT** |
| Plaintiff, | [11 U.S.C. §523(a)(2)(A); 11 U.S.C. §523(a)(2)(B)] |
| vs. | |
| ERIC V. AND JESSICA L. BEELARD | DATE: See Summons |
| Defendant. | |

## COMPLAINT TO DETERMINE THE DISCHARGEABILITY OF DEBT AND FOR JUDGMENT

Plaintiff, through its attorney, Justin T. Ryan, of Law Offices of Justin T. Ryan, states as follows:

---

PLAINTIFF'S COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

- 1

## PARTIES AND JURISDICTION

1. This is an adversary proceeding in bankruptcy brought by Heritage Pacific Financial, LLC. dba Heritage Pacific Financial pursuant to 11 U.S.C. § 523.

2. Defendant filed a Chapter 7 bankruptcy petition on October 12, 2010. Jurisdiction is vested in this proceeding pursuant to 28 U.S.C. § 157, 28 U.S.C. §1334, and 11 U.S.C. § 523; this matter is a core proceeding.

4. Plaintiff is a creditor of defendant. Plaintiff is the assignee and current owner and/or holder of Defendant's loan and related mortgage note.

## GENERAL ALLEGATIONS

5. Plaintiff is informed and believes, and thereon alleges that in an effort to obtain funds to purchase and/or refinance a property, Defendant completed, or caused to have completed on their behalf, a Uniform Residential Loan Application ("Loan Application"), otherwise known as a 1003 Form, which Defendant executed and signed. A true and correct copy of the Uniform Residential Loan Application is attached as **Exhibit "A"** and incorporated by reference herein.

6. Defendant obtained loans evidenced by promissory notes executed by Defendant. Plaintiff is the true and current owner and holder of Defendant's loan and related promissory note. A true and correct copy of the Note is attached as **Exhibit "B"** and incorporated by reference herein.

7. Defendant certified the accuracy of the information contained in the Loan Application and expressly consented to the verification and re-verification of the information contained therein.

8. Among other information required to be certified, and in fact certified, by Defendant on the Loan Application, was information regarding Defendant's current employer, gross monthly income, and intent to use the property securing the loan as Defendant's primary residence.

9. Defendant knew that their then-current income was insufficient to obtain the

loans, and in an effort to secure the more favorable primary-residence financing rate, Plaintiff is informed, believes and thereon alleges that Defendant provided, prepared, or caused to be prepared, a Loan Application which materially misstated Defendant's employment, income and/or intended use of the property as a primary residence; and caused Defendant's agent to submit to the lender a materially false Loan Application and other materially false documents related thereto.

10. Plaintiff is informed, believes, and thereon alleges that Defendant directed, instructed, and caused to have their materially false Loan Application and supporting documentation transmitted to Defendant's lender knowing that the information in the Loan Application and supporting documentation was materially false.

11. The lender did not know, and had no reason to know, that the information and documentation provided by Defendant in and in conjunction with the Loan Application was false. In reliance on the information and documentation provided by Defendant, the lender approved Defendant's Loan Application.

12. Defendant executed a promissory note in favor of the lender, pursuant to which Defendant agreed and promised to repay the loan according to the terms of the promissory note. The proceeds of the loan, as stated in the promissory note, were to be used to purchase and/or refinance the property securing the promissory note.

13. The lender fully performed, including by disbursing the loan proceeds to Defendant. The lender and/or its assignees duly assigned Defendant's loan and promissory note to Plaintiff, who is currently the owner and holder of Defendant's loan and promissory note.

14. Defendant defaulted on their payment obligations and obligation to re-verify the information contained in the Loan Application despite the Plaintiff's request therefore.

15. Plaintiff is informed, believes, and thereon alleges that in applying for the loan, the Defendant knowingly misstated her monthly income on their Loan Application and concealed their true income. Plaintiff is further informed and believes that the Defendant knowingly misstated the status of their employment on the Loan Application and concealed their true employment status. Plaintiff is further informed and believes that Defendant misrepresented their residency such that

the property securing the loan was not Defendant's primary residence, and concealed their true residency status.

16. The promissory note was duly assigned by the original lender and/or its assignees to Plaintiff, who is the current owner and/or holder of Defendant's Loan and related mortgage note.

17. Plaintiff is not barred from pursuing this action by any anti-deficiency statute or rule. Plaintiff does not seek a deficiency judgment for the balance of a promissory note following foreclosure, but rather seeks a judgment for Defendant's fraud in connection with their loan application, as alleged herein. Plaintiff has attempted to resolve this matter prior to filing this complaint by contacting Defendant.

## FIRST CLAIM FOR RELIEF

### False Pretenses, False Representation or Actual Fraud

### [11 U.S.C. § 523(a)(2)(A)]

18. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 17, above.

19. In an effort to obtain funds to purchase and/or refinance their property, Defendant completed, or caused to have completed on their behalf, a Uniform Residential Loan Application ("Loan Application"), otherwise known as a 1003 Form, which Defendant executed and signed. A true and correct copy of the Uniform Residential Loan Application is attached as **Exhibit "A"** and incorporated by reference herein. Defendant utilized this loan, creating a balance due and owing on this loan of $49,636.26 including interest as of the date the bankruptcy petitioner was filed.

20. Defendant obtained the money by false pretenses, a false representation and actual fraud by misrepresenting that the money obtained for the purpose of purchasing a property for their primary residence. Defendant misrepresented her intended use of the property as their primary residence as the property was being purchased for another individual.

21. The lender did not know, and had no reason to know, that defendant misrepresented their intended use of the property and in reliance on the information approved the loan.

22. At the time of obtaining the money from the lender execution of the loan, Defendant failed to disclose to Lender that they did not and would not use the property as their primary residence. Lender justifiably relied on Defendant's representation and paid money for the purchase of a primary residence.

23. By reason of the foregoing, Defendant obtained money from the lender through false pretenses, false representations and actual fraud. Defendant's actions constitute material misrepresentations of the facts. Defendant intended for the lender to rely on the misrepresentation.

24. Lender reasonably relied upon Defendant's misrepresentations and was induced to lend money to Defendant by those misrepresentations.

25. Within the three years prior to the filing of this Complaint, through its independent investigation and collection attempts, Plaintiff discovered that the representations made on Defendant's Loan Application were false.

26. As a result of Defendant's conduct, Plaintiff has suffered damages at a minimum in the amount of $49,636.26 plus interest and reasonable attorney fees. Pursuant to 11 USC § 523(a)(2)(A), Defendant should not be granted a discharge of this debt to the Plaintiff in the amount of $49,636.26 plus interest and reasonable attorney fees.

## SECOND CLAIM FOR RELIEF

### Use of False Statement in Writing

### [11 U.S.C. § 523(a)(2)(B)]

27. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 25, above.

28. In an effort to obtain funds to purchase and/or refinance their property, Defendant completed, or caused to have completed on their behalf, a Uniform Residential Loan Application ("Loan Application"), otherwise known as a 1003 Form, which Defendant executed and signed.

A true and correct copy of the Uniform Residential Loan Application is attached as **Exhibit "A"** and incorporated by reference herein. Defendant utilized this loan, creating a balance due and owing on this loan of $49,636.26 including interest as of the date the bankruptcy petitioner was filed.

29. In an effort to obtain the funds, Defendant caused to have completed on their behalf, a Uniform Residential Loan Application, otherwise known as a 1003 Form, which Defendant executed and signed.

30. On the Uniform Residential Loan Application, Defendant certified the accuracy of the information contained therein including but not limited to financial condition of Defendant and consented to the verification and re-verification of the information contained therein.

31. Among the information provided and certified by Defendant in their Uniform Residential Loan Application, Defendant was required to certify information regarding their current employer, statements of their gross monthly income, and to certify that their intended to use the loan proceeds to purchase real property which Defendant intended to use as their primary residence.

32. In furtherance of their effort, because Defendant knew that their then current income was insufficient to support the approval of the loan and/or in an effort to secure the more favorable primary-residence financing rate, Plaintiff is informed, believes and thereon alleges that Defendant:

    a) Provided, prepared, caused to be prepared, false loan applications, which misstated their employment, income and/or intended use of the property as a primary residence;

    b). Certified a false loan application, which misstated their employment income and/or intended use of the property as a primary residence; and

    c). Caused their agents to submit to lenders a false loan application and other loan related documents

33. The lender did not know, and had no reason to know, that the information and documentation provided by Defendant in, and in conjunction with, their loan applications was

false, and in reliance on the information and documentation provided by Defendant to the lender therein approved the loan.

34. Defendant executed a promissory note in favor of their initial lender, its successors, transferees, and assigns. In the loan application Defendant expressly represented to the original lender and to its successor in interest the accuracy of the information.

35. The proceeds of the loan, as referenced in the promissory note, were to be used by Defendant in the purchase or refinance of the property described therein. In exchange, Defendant agreed and promised to pay according to the mutually agreed upon terms and conditions more particularly described in the promissory notes.

36. Lender fully performed, and Defendant acquired title to the property. The promissory note was duly assigned by the original lender and/or its assignees to Plaintiff, who is the current owner and/or holder of Defendant's Loan and related mortgage note.

37. Defendant has defaulted on their obligations to pay and to re-verify the information contained in the Uniform Residential Loan Application. Despite Plaintiff's attempts to secure information from Defendant to re-verify the information contained in their loan application, Defendant has failed and/or refused to comply with Plaintiff's requests.

38. Within the three years prior to the filing of this Complaint, through its independent investigation and collection attempts, Plaintiff discovered that the representations made on Defendant's Loan Application were false.

39. By reason of the foregoing, Defendant obtained money by using a statement in writing that falsely represented Defendant's financial condition on which the lender relied on. Defendant submitted the loan application with the intent to deceive the lender. Defendant, therefore, had a specific intent to defraud their lender.

40. Defendant's actions constitute material misrepresentations of the facts. Defendant intended for their ender to rely on those misrepresentations. Lender did rely upon Defendant's misrepresentations of repayment and was induced to lend money to Defendant by those misrepresentations. Lender reasonably relied on Defendant's misrepresentations.

41. As a result of Defendant's conduct, Plaintiff has suffered damages at a minimum in the amount of $49,636.26 plus interest and reasonable attorney fees. Pursuant to 11 USC § 523(a)(2)(B), Defendant should not be granted a discharge of this debt to the Plaintiff in the amount of $49,636.26 plus interest and reasonable attorney fees.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court grant the following relief:

1. A monetary judgment against Defendant in the amount of $49,636.26, plus accrued interest at the contractual rate, plus, additional interest at the contractual rate, which will continue to accrue until the date of judgment herein;

2. An order determining that such debt is non-dischargeable under 11 USC § 523(a)(2)(A) and (B);

3. An order awarding Plaintiff its attorneys' fees and costs incurred herein; and

4. An order awarding Plaintiff such additional relief as this Court deems just and equitable.

Dated: December 8, 2010         **Respectfully Submitted,**
                                **LAW OFFICES OF JUSTIN T. RYAN**

                                By: /S/ JUSTIN T. RYAN
                                    Justin T. Ryan
                                    Attorney for Plaintiff
                                    Heritage Pacific Financial, LLC. dba
                                    Heritage Pacific Financial

JESSICA

## Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

### I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA  [X] Conventional  ☐ Other (explain): ☐ FHA  ☐ USDA/Rural Housing Service | | | Agency Case Number | Lender Case Number 2050700524 |
|---|---|---|---|---|---|
| Amount $50,000 | Interest Rate 5.2500% | No. of Months 300 | Amortization Type: ☐ Fixed Rate  ☐ GPM  [X] ARM (type): HELOC 10 yr Draw 15 yr Amort ☐ Other (explain): | | |

### II. PROPERTY INFORMATION AND PURPOSE OF LOAN

Subject Property Address (street, city, state, & ZIP): 1011 Hillside Boulevard, South San Francisco, CA 94080  County: San Mateo  No. of Units: 1

Legal Description of Subject Property (attach description if necessary): SEE PRELIM  Year Built: 1950

Purpose of Loan: ☐ Purchase  ☐ Construction  ☐ Other (explain):  Property will be: [X] Primary Residence  ☐ Secondary Residence  ☐ Investment
[X] Refinance  ☐ Construction-Permanent

Complete this line if construction or construction-permanent loan.
| Year Lot Acquired: 0 | Original Cost: $ | Amount Existing Liens: $ | (a) Present Value of Lot: $ | (b) Cost of Improvements: $0 | Total (a + b): $ |

Complete this line if this is a refinance loan.
| Year Acquired: 2004 | Original Cost: $500,000 | Amount Existing Liens: $520,000 | Purpose of Refinance: Cashout | Describe Improvements: ☐ made ☐ to be made  Cost: $0 |

Title will be held in what Name(s): ERIC BEELARD & JESSICA SALVI
Manner in which Title will be held: Joint Tenancy
Estate will be held in: [X] Fee Simple  ☐ Leasehold (show expiration date)

Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain): Equity On Subject Property

### III. BORROWER INFORMATION

| Borrower | Co-Borrower |
|---|---|
| Borrower's Name (include Jr. or Sr. if applicable): JESSICA SALVI | Co-Borrower's Name (include Jr. or Sr. if applicable): |
| Social Security Number: ___2146  Home Phone: ___  DOB: ___1981  Yrs. School: 14 | Social Security Number:  Home Phone:  DOB:  Yrs. School: |
| ☐ Married  [X] Unmarried (include single, divorced, widowed)  ☐ Separated  Dependents (not listed by Co-Borrower) no. 0 ages | ☐ Married  ☐ Unmarried  ☐ Separated  Dependents no. ages |
| Present Address (street, city, state, ZIP): [X] Own ☐ Rent  1yr 6m No. Yrs. 1011 HILLSIDE BLVD  S SAN FRANCISCO, CA 94080 | Present Address: ☐ Own ☐ Rent  No. Yrs. |
| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |

If residing at present address for less than two years, complete the following:
| Former Address (street, city, state, ZIP): ☐ Own [X] Rent  1yr  No. Yrs. 672 POPPY CIRCLE  Vacaville, CA 95687 | Former Address: ☐ Own ☐ Rent  No. Yrs. |

### IV. EMPLOYMENT INFORMATION

| Borrower | | Co-Borrower | |
|---|---|---|---|
| Name & Address of Employer: OUTFIT PAINTBACK  1021 HUME WAY E  Vacaville, CA 95687 | [X] Self Employed  Yrs. on this job: 2 Yrs  Yrs. employed in this line of work/profession: 2 | Name & Address of Employer: | ☐ Self Employed  Yrs. on this job  Yrs. employed in this line of work/profession |
| Position/Title/Type of Business: OWNER/MANAGER/ | Business Phone (incl. area code): ___ | Position/Title/Type of Business: | Business Phone: |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer: | ☐ Self Employed  Dates (from - to)  Monthly Income: $ | Name & Address of Employer: | ☐ Self Employed  Dates (from - to)  Monthly Income: $ |
|---|---|---|---|
| Position/Title/Type of Business: | Business Phone: | Position/Title/Type of Business: | Business Phone: |
| Name & Address of Employer: | ☐ Self Employed  Dates (from - to)  Monthly Income: $ | Name & Address of Employer: | ☐ Self Employed  Dates (from - to)  Monthly Income: $ |
| Position/Title/Type of Business: | Business Phone: | Position/Title/Type of Business: | Business Phone: |

Freddie Mac Form 65 01/04
Fannie Mae Form 1003 01/04
Page 1 of 4
Initials: JS

VMP-21N (0305)  VMP Mortgage Solutions (800)521-7291

EXHIBIT A

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 7,000.00 | $ | $ 7,000.00 | Rent | $ | |
| Overtime | | | | First Mortgage (P&I) | 2,608.00 | $ 3,118.00 |
| Bonuses | | | | Other Financing (P&I) | 1,002.00 | 218.75 |
| Commissions | | | | Hazard Insurance | 54.00 | 54.00 |
| Dividends/Interest | | | | Real Estate Taxes | 249.99 | 249.99 |
| Net Rental Income | | | | Mortgage Insurance | | 0.00 |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ 7,000.00 | $ | $ 7,000.00 | Total | $ 3,913.99 | $ 3,640.74 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income — Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed [ ] Jointly [X] Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | LIABILITIES | | |
| | | Name and address of Company | $ Payment/Months | $ |
| List checking and savings accounts below | | HOMEQ | 2,608.00 | 411,741.53 |
| Name and address of Bank, S&L, or Credit Union | | | 158 | * |
| | | Acct. no. 5403 | | |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | 0 | HOMEQ | 1,002.00 | 103,657.50 |
| | | | 103 | * |
| | | Acct. no. 4214 | | |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | 0 | CHASE | 983.00 | 45,600.00 |
| | | | 46.00 | |
| | | Acct. no. 9402 | | |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | 0 | G M A C | 939.00 | 45,080.00 |
| | | | 48 | |
| | | Acct. no. 8863 | | |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Stocks & Bonds (Company name/number & description) | $ | 0 UNITED CONSUMER FINL S | 57.00 | 1,833.00 |
| | | | 32 | |
| | | Acct. no. 8642 | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Life insurance net cash value Face amount: $ | $ | CHASE | 34.00 | 1,733.00 |
| Subtotal Liquid Assets | $ | | 51 | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 650,000.00 | Acct. no. 8290 | | |
| Vested interest in retirement fund | $ | Name and address of Company | $ Payment/Months | $ |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year) | $ | | | |
| | | Acct. no. | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ 0.00 | |
| Other Assets (itemize) | $ | | | |
| | | Job-Related Expense (child care, union dues, etc.) | $ 0.00 | |
| | | Total Monthly Payments | $ 147.00 | |
| Total Assets a. | $ 650,000.00 | Net Worth (a minus b) ▶ $ 644,954.00 | Total Liabilities b. | $ 5,046.00 |

2050700524

Initials JS

Page 2 of 4

VMP-21N (0305)

Freddie Mac Form 65 01/04
Fannie Mae Form 1003 01/04

## VI. ASSETS AND LIABILITIES (cont.)

**Schedule of Real Estate Owned** (if additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 1011 HILLSIDE BLVD SOUTH SAN FRANCISCO, CA 94080 | SFR | $ 650,000 | $ 515,399 | $ | $ 3,610 | $ 304 | $ |
| | | | | | | | |
| | | | | | | | |
| Totals | | $ 650,000 | $ 515,399 | $ | $ 3,610 | $ 304 | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):
Alternate Name | Creditor Name | Account Number

## VII. DETAILS OF TRANSACTION

| | | |
|---|---|---|
| a. Purchase price | $ | 0 |
| b. Alterations, improvements, repairs | | 0 |
| c. Land (if acquired separately) | | 0 |
| d. Refinance (incl. debts to be paid off) | | 515,399 |
| e. Estimated prepaid items | | 109 |
| f. Estimated closing costs | | 2,061 |
| g. PMI, MIP, Funding Fee | | 0 |
| h. Discount (if Borrower will pay) | | 0.00 |
| i. Total costs (add items a through h) | | 517,569 |
| j. Subordinate financing | | 0 |
| k. Borrower's closing costs paid by Seller | | 0 |
| l. Other Credits (explain) | | |
| Paid by Lndr/Direct Bill/Other | | 0 |
| | | 0 |
| | | 0 |
| Paid at Application | | 0 |
| Earnest Money Deposit | | 0 |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | | 50,000 |
| n. PMI, MIP, Funding Fee financed | | 0 |
| o. Loan amount (add m & n) | | 50,000 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | | 467,569 |

## VIII. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower Yes | Borrower No | Co-Borrower Yes | Co-Borrower No |
|---|---|---|---|---|
| a. Are there any outstanding judgments against you? | | X | | |
| b. Have you been declared bankrupt within the past 7 years? | | X | | |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | X | | |
| d. Are you a party to a lawsuit? | | X | | |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | X | | |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | | X | | |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | | X | | |
| h. Is any part of the down payment borrowed? | | X | | |
| i. Are you a co-maker or endorser on a note? | | X | | |
| j. Are you a U.S. citizen? | X | | | |
| k. Are you a permanent resident alien? | | X | | |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | X | | | |
| m. Have you had an ownership interest in a property in the last three years? | | X | | |
| (1) What type of property did you own - - principal residence (PR), second home (SH), or investment property (IP)? | | | | |
| (2) How did you hold title to the home - - solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | | | | |

## IX. ACKNOWLEDGMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application, and Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

Borrower's Signature: X Jessica Sali     Date: 8-22-05
Co-Borrower's Signature: X     Date:

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may discriminate neither on the basis of this information, nor on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation or surname. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

**BORROWER** [ ] I do not wish to furnish this information.
Ethnicity: [ ] Hispanic or Latino  [X] Not Hispanic or Latino
Race: [ ] American Indian or Alaska Native  [ ] Asian  [ ] Black or African American  [ ] Native Hawaiian or Other Pacific Islander  [X] White
Sex: [X] Female  [ ] Male

**CO-BORROWER** [ ] I do not wish to furnish this information.
Ethnicity: [ ] Hispanic or Latino  [ ] Not Hispanic or Latino
Race: [ ] American Indian or Alaska Native  [ ] Asian  [ ] Black or African American  [ ] Native Hawaiian or Other Pacific Islander  [ ] White
Sex: [ ] Female  [ ] Male

**To be Completed by Interviewer**
This application was taken by:
[ ] Face-to-face interview
[ ] Mail
[ ] Telephone
[ ] Internet

Interviewer's Name (print or type): Virginia House
Interviewer's Signature: 
Date: 
Interviewer's Phone Number (incl. area code):

Name and Address of Interviewer's Employer:
Homefield Financial, Inc.
9445 Fairway View Place Ste. 110
Rancho Cucamonga, CA 91730

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: JESSICA SALVI | Agency Case Number: |
|---|---|---|
| | Co-Borrower: | Lender Case Number: 2050700524 |

ADDITIONAL LIABILITIES
CAPITAL 1 BK
　　Account # 412174194465 Balance: $887.00 Payment: $26.00 for 35 Months
CHASE
　　Account # 4266851047839052 Balance: $543.00 Payment: $10.00 for 55 Months
WFNNB/VICTORIAS SECRET
　　Account # 82221 Balance: $50.00 Payment: $20.00 for 3 Months

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: X *Jesseca Sali* | Date 8-22-05 | Co-Borrower's Signature: X | Date |
|---|---|---|---|

-21N (0305)　　　　Page 4 of 4　　　　2050700524　　Freddie Mac Form 65 01/04
　　　　　　　　　　　　　　　　　　　　　　　　　　　Fannie Mae Form 1003 01/04

Loan No: 

# HOME EQUITY LINE OF CREDIT AGREEMENT
# AND DISCLOSURE STATEMENT
### Interest Only

MIN: 1001532-2050700524-4

AUGUST 16, 2005      NEWPORT BEACH      CALIFORNIA
[Date]      [Title City]      [Title State]

1011 HILLSIDE BOULEVARD, SOUTH SAN FRANCISCO, CALIFORNIA 94080
[Property Address]

| | | | |
|---|---|---|---|
| Credit Limit | $ 50,000.00 | Draw Period | 120 Months |
| Initial Advance | $ 50,000.00 | Repayment Period | 180 Months |
| Minimum Advance | $ 100.00 | Minimum Balance | $0.00 |
| Margin | 4.125 % | | |
| Initial ANNUAL PERCENTAGE RATE | 5.250 % | | |

- **Other FINANCE CHARGES (due at closing)**

| | | |
|---|---|---|
| Loan Origination Fee | $ | 1,000.00 |
| Loan Discount Fee | $ | |
| Underwriting Fee | $ | |
| Other PROCESSING FEE | $ | 200.00 |
| Other DOC PREP | $ | 250.00 |
| Other CLOSING FEE | $ | 200.00 |
| Other SIGNER FEE | $ | 75.00 |
| Other REC/FILING FEE | $ | 75.00 |
| Other | $ | |
| Other | $ | |

- **Other Loan Fees and Charges (due at closing)**

| | | |
|---|---|---|
| Appraisal | $ | |
| Other TITLE FEE | $ | 100.00 |
| Other | $ | |
| Other | $ | |
| Other | $ | |
| Other | $ | |
| Other | $ | |
| Other | $ | |

(due when incurred)
Stop Payment Charge  $  15.00

[X] **Discounted Initial Rate; Fixed for 3 Months.** The initial Daily Periodic Rate (as defined in Section 5 below) is 0.01438 % ("Initial Daily Periodic Rate"), which corresponds to the Initial ANNUAL PERCENTAGE RATE indicated above. The Initial Daily Periodic Rate is fixed and will be effective until NOVEMBER 16, 2005 ("Discount Period"). After this date and in accordance with Section 5 below, the ANNUAL PERCENTAGE RATE may change and will be determined by adding the Margin described above to the Index (as defined in Section 1 below). During the Discount Period the Daily Periodic Rate and corresponding ANNUAL PERCENTAGE RATE will not be based on the calculation used to determine later adjustments to the Daily Periodic Rate and corresponding ANNUAL PERCENTAGE RATE. Had they been so based, the Initial Daily Periodic Rate would have been 0.02842 % and the corresponding Initial ANNUAL PERCENTAGE RATE would have been 10.375 %.

[ ] **Initial Rate Not Discounted.** The Daily Periodic Rate is _____ %, which corresponds to the Initial ANNUAL PERCENTAGE RATE indicated above. The ANNUAL PERCENTAGE RATE may change and will be determined by adding the Margin described above to the Index (as defined in Section 1 below).

1. **DEFINITIONS:**
   (A) "Agreement" means this document.
   (B) "You" or "Your" is ERIC BEELARD, JESSICA SALVI

**EXHIBIT B**

Your address is 1011 HILLSIDE BOULEVARD, SOUTH SAN FRANCISCO, CALIFORNIA 94080

(G) "**Credit Limit**" means the maximum aggregate amount of principal of the Loans that Holder will allow you to owe under this Agreement, unless otherwise agreed. **The Credit Limit is indicated above.**

(H) "**Account Balance**" means the total of the unpaid principal of the Loans, plus earned but unpaid FINANCE CHARGES, fees, and credit insurance premiums.

(I) "**Minimum Balance**" means the minimum amount of principal of all Loans that you must maintain under the Account. **The Minimum Balance is indicated above.**

(J) "**Initial Advance**" means the amount of the Loan that you must accept to open the Account. **The Initial Advance is indicated above.**

(K) "**Minimum Advance**" means the minimum amount of a Loan that you must request by any means other than the credit card or cards that Holder furnishes to you to make purchases or receive advances ("Credit Card"). **The Minimum Advance is indicated on page 1 above.**

(L) "**Draw Period**" means the period of time during which you may request Loans and must make payments on your Account Balance. **The Draw Period is indicated on page 1 above.**

(M) "**Repayment Period**" means the period of time beginning at the end of the Draw Period during which you no longer may request Loans and must repay the Account Balance. **The Repayment Period is indicated on page 1 above.**

(N) "**Billing Statement**" means a statement furnished by Holder each Billing Cycle (as defined in subsection (O) below) that shows, among other things, Loans, FINANCE CHARGES, other charges, payments made, other credits, the previous Account Balance, the current Account Balance, and the required payment for the Account during the Billing Cycle.

(O) "**Billing Cycle**" means the regular period or interval between the days or dates of the Billing Statements during which FINANCE CHARGES accrue and that will be used to determine the amount of your payment and when your payment is due. **The Billing Cycle is monthly.**

(P) "**Index**" means the highest base rate on corporate loans at large U.S. money center commercial banks that "The Wall Street Journal" publishes as the prime rate.

## 2. OPENING YOUR ACCOUNT

The Account will be opened when you have signed and delivered in acceptable form all documents considered necessary by Holder and Holder makes the Initial Advance to you. Each of you who signs this Agreement is jointly and individually obligated to keep all of the promises made in this Agreement, and, as such, Holder may require any of you to pay all amounts due under this Agreement. Each of you agrees not to give Holder conflicting instructions under this Agreement.

## 3. ACCESSING YOUR ACCOUNT

You may access the Account after any right you have to cancel this Agreement expires and all of Holder's conditions have been met. You may access the Account initially only for an amount equal to the Initial Advance. Thereafter, you may access the Account only for an amount equal to or greater than the Minimum Advance; the foregoing Minimum Advance requirement does not apply when you access the Account using a Credit Card. Holder at Holder's option may without obligation make a Loan in an amount that is less than the Minimum Advance; by doing so, however, Holder does not waive the right to later refuse to make such a Loan.

You may access the Account by: (a) using a Credit Card; (b) writing a check using one of the checks that Holder furnishes to you ("Checks"); (c) authorizing Holder to pay a third party or account; or (d) any other method acceptable to Holder. Each of you who signs this Agreement may access the Account jointly or individually, and Holder may rely on instructions from any one of you with regard to this Agreement.

You may not use any Loan provided by Holder to make payments on the Account. In addition, Holder reserves the right not to honor a Check under the following circumstances: (a) the Check is post-dated (if a post-dated Check is paid and as a result any other Check is returned, Holder will not be responsible); (b) a Check or Checks have been reported lost or stolen; (c) the Check is not signed by one of you; or (d) the Account has been terminated or suspended as provided in this Agreement or may be so terminated or suspended if Holder pays the Check. Dishonor of a Check by Holder for any reason provided in this Agreement will not constitute wrongful dishonor. Holder's liability otherwise for wrongful dishonor, if any, of a Check is limited to your actual damages.

## 4. AVAILABILITY OF LOANS

You may access the Account and receive a Loan during the Draw Period, subject to the provisions of this Agreement. Holder at Holder's option may extend the Draw Period. During the Draw Period, you may borrow against the Account, repay any portion of the Account Balance, and re-borrow such portions up to the Credit Limit.

You may not access the Account so as to cause the Account Balance to exceed the Credit Limit. However, Holder at Holder's option may make a Loan that causes the Account Balance to exceed the Credit Limit; by doing so, however, Holder does not waive the right to later refuse to make such a Loan. If Holder agrees to make a Loan that causes the Account Balance to exceed the Credit Limit, you agree to execute additional security documents.



Loan No: 

The FINANCE CHARGE on a Loan begins to accrue immediately from the time Holder makes the Loan to you. There is no "free ride period" during which FINANCE CHARGES will not accrue.

The FINANCE CHARGE is determined for each day by applying a daily periodic rate ("Daily Periodic Rate") to the Account Balance for that day; the Daily Periodic Rate is 1/365th of the ANNUAL PERCENTAGE RATE applicable to that day. The total FINANCE CHARGE for each Billing Cycle is determined by adding together the FINANCE CHARGE for the actual number of days during the Billing Cycle.

The Initial ANNUAL PERCENTAGE RATE is indicated on the first page of this Agreement. The manner in which the ANNUAL PERCENTAGE RATE will change will be determined by the box marked on the first page of this Agreement.

The ANNUAL PERCENTAGE RATE will increase or decrease if the Index increases or decreases; the corresponding increase or decrease in the Daily Periodic Rate will be determined as described above. An increase or decrease in the ANNUAL PERCENTAGE RATE will result in a corresponding increase or decrease in the FINANCE CHARGE and may result in a corresponding increase or decrease in your monthly payment. The Index may change daily; however, the Index in effect on the day the ANNUAL PERCENTAGE RATE is adjusted will be used to determine the new ANNUAL PERCENTAGE RATE. Any change in the ANNUAL PERCENTAGE RATE will take effect on the first day of the Billing Cycle and will not increase more than once per Billing Cycle.

The ANNUAL PERCENTAGE RATE will never exceed the lesser of 18.000 % or the highest allowable rate for this type of Agreement as determined by applicable state or federal law ("Maximum ANNUAL PERCENTAGE RATE"). The ANNUAL PERCENTAGE RATE includes only interest and no other costs.

6. PAYMENTS
You promise to pay to Holder any amounts owed under this Agreement as follows:
 (A) Draw Period
During the Draw Period, no later than the payment date specified in your Billing Statement, you must pay at least the Minimum Monthly Draw Period Payment. The "Minimum Monthly Draw Period Payment" will include (a) late charges and any other charges authorized by this Agreement, including without limitation, any expenses or advances incurred by Lender under the Security Instrument; (b) the accrued FINANCE CHARGES as of the last day of the Billing Cycle; (c) any amounts past due on your Account; and (d) premiums for any optional credit life insurance you may decide to obtain through Lender. If, however, the unpaid balance in your Account is less than the Minimum Payment, your Minimum Payment will be equal to the balance in your Account. Minimum Monthly Draw Period Payments will not fully repay the principal of the Loans.
 (B) Repayment Period
During the Repayment Period, no later than the payment date specified in your Billing Statement you must pay at least the Minimum Monthly Repayment Period Payment. The "Minimum Monthly Repayment Period Payment" is equal to the amount of any accrued FINANCE CHARGES and credit insurance premiums plus principal in an amount necessary to fully amortize the Account Balance by the Maturity Date defined below.
 (C) Final Payment
On the last day of the Repayment Period ("Maturity Date"), you must pay the entire Account Balance.
 (D) General Payment Terms
If the Account Balance on any payment date is less than the required minimum payment, you must pay the entire Account Balance. You must make all payments in U.S. dollars at the address shown on the Billing Statement. Your payment will be due on the date shown in your Billing Statement.
 (E) Prepayment
You may prepay all or any portion of the Account Balance at any time without penalty; however, if your prepayment does not fully repay the entire Account Balance, you must continue to make the required minimum monthly payments.

7. FEES AND CHARGES
You agree to pay the following additional fees and charges to the extent not prohibited by applicable law:
 (A) Annual Charge
An annual charge of $ 0.00 . Holder will add this amount to the Account Balance each year on the anniversary date of the Account.
 (B) Late Charge
A late charge on any monthly payment not paid within 15 calendar days from the date the payment is due. The amount of the charge will be 5.000 % of the payment of principal and interest, maximum $ 10.94 ; provided, however, Holder may not charge this late charge to the extent prohibited by applicable law.
 (C) Other FINANCE CHARGES
The Other FINANCE CHARGES indicated on the first page of this Agreement.

Loan No: 

### 8. NOTICES

Unless applicable law requires a different method, any notice that must be given to you under this Agreement will be given by delivering it or mailing it by first class mail to the Property Address above or at a different address if you give Holder a notice of your different address. Any notice that must be given to Holder under this Agreement will be given by delivering it or mailing it by first class mail to Holder at the address stated in Section 1(C) above or at a different address if you are given a notice of that different address.

### 9. SECURITY

The Account will be secured by a lien taken against your home pursuant to a separate Mortgage, Deed of Trust, or Security Deed ("Security Instrument") dated the same date as this Agreement. The Security Instrument requires you to take certain actions to protect your home, which is located at the address shown above ("Property"). You could lose the Property and your home if you do not meet the conditions of this Agreement or the Security Instrument. Some of the conditions of the Security Instrument are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 11, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract, or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of the Secured Debt. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 8 within which Borrower must pay the Secured Debt in full. If Borrower fails to pay the Secured Debt in full prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

You also agree to obtain and maintain such insurance on the Property as Holder may require; you agree to maintain such insurance in the amounts and for the periods Holder requires. Unless prohibited by applicable law, the Account will be secured as well by proceeds of such insurance. You may obtain such insurance from the carrier of your choice, subject to Holder's right to disapprove your choice, which right will not be exercised unreasonably.

If you fail to keep the insurance required under this Section, Holder may obtain such insurance coverage at Holder's option and your expense. Holder is under no obligation to purchase any particular type or amount of coverage; as such, you, your equity in the Property, or the contents of the Property may not be protected to the extent you desire. Any amount paid by Holder under this Section will be added as a Loan under this Agreement and be subject to the FINANCE CHARGE.

### 10. CREDIT AND PROPERTY INFORMATION

You agree to furnish personal financial information and information about the Property and your occupation of the Property reasonably requested by Holder from time to time. Such information must be furnished to Holder within a reasonable time but in no event later than 30 days after Holder's request. In addition, you authorize Holder, at Holder's expense, to make or have made credit inquiries, and you authorize any person to whom Holder makes such inquiries to furnish Holder with the requested information. You also authorize Holder to release information regarding the status and history of the Account to third persons, including without limitation credit bureaus, merchants, and financial institutions, to the extent permitted by applicable law.

### 11. ASSIGNMENT

Holder may assign or transfer this Agreement and the Security Instrument without notice to you. You may not assign or transfer your rights and obligations under this Agreement without Holder's written authorization; however, this Agreement is binding upon your heirs, successors, and legal representatives.

### 12. TAX DEDUCTIBILITY

You should consult a tax advisor regarding the deductibility of interest and charges under the Account.

### 13. DEFAULT

You will be in default under this Agreement if:
(A) You engage in fraud or material misrepresentation in connection with the Account or with any aspect of the Account,

Loan No. 

a judgment is filed against you that subjects the Property to action that adversely affects Holder's interest in the Property; (ix) the creation of a lien on the Property without Holder's permission; or (x) a superior lien holder forecloses on the Property such that Holder's interest in the Property is adversely affected.

### 14. REMEDIES FOR DEFAULT

If you are in default, Holder may terminate the Account, require you to pay the entire outstanding Account Balance, and charge a termination fee and any collection fees unless otherwise prohibited from doing so by applicable law. Holder at Holder's option also may take one or more lesser actions. Such lesser actions may include without limitation reducing the Credit Limit. Holder may take action under this Section only after complying with any notice or cure provisions required under applicable law. In the event Holder elects not to terminate the Account or take lesser action when you are in default, Holder does not forfeit or waive Holder's right to do so at a later time or to do so if you are in default again.

### 15. SUSPENSION OF ACCOUNT AND REDUCTION OF CREDIT LIMIT

Unless otherwise prohibited from doing so by applicable law, Holder may temporarily suspend the Account or reduce the Credit Limit if:

(A) The value of the Property declines significantly below the Property's appraised value for purposes of the Account;
(B) Holder reasonably believes you will not be able to meet the repayment requirements under this Agreement due to a material change in your financial circumstances;
(C) You are in default of a material obligation of this Agreement or the Security Instrument; for purposes of this Agreement a material obligation will include without limitation your obligation to supply Holder with the credit and property information required under Section 10 of this Agreement;
(D) A governmental action prevents Holder from imposing the ANNUAL PERCENTAGE RATE or impairs Holder's security interest under the Security Instrument such that the value of the security interest is less than 120 percent of the Credit Limit;
(E) A regulatory agency has notified Holder that continued advances would constitute an unsafe practice;
(F) The ANNUAL PERCENTAGE RATE reaches the maximum rate permitted under this Agreement; or
(G) Any of you requests to do so; provided, that Holder may require that any such request be in writing and sent to Holder by certified mail, and that Holder may require that any request to reinstate the Account also be in writing and sent by all of you.

If Holder suspends the Account or reduces the Credit Limit, Holder will send you notice of Holder's decision as provided in Section 8 of this Agreement. Any request by you to reinstate the Account or the Credit Limit must be in writing and sent to Holder as provided in Section 8 of this Agreement.

### 16. CHANGING THE TERMS OF THIS AGREEMENT

Holder may not change the terms of this Agreement except under the following circumstances:

(A) Holder may change the Index and Margin if the original Index or any replacement index is no longer available. Any new Index must have a historical movement similar to the original Index and together with a new Margin must result in an ANNUAL PERCENTAGE RATE substantially similar to the ANNUAL PERCENTAGE RATE in effect at the time the original Index or replacement index became unavailable.
(B) Holder may make changes that you agree to in writing.
(C) Holder may make changes that unequivocally benefit you throughout the remaining term of the Account.
(D) Holder may make changes to insignificant terms of this Agreement.

Unless otherwise prohibited from doing so by applicable law, Holder may refuse to make additional Loans or reduce the Credit Limit whenever the Maximum ANNUAL PERCENTAGE RATE is reached.

### 17. CANCELING THE ACCOUNT

You may cancel the Account at any time by notifying Holder in writing as provided in Section 8 above. Cancellation of the Account by any of you will cancel the Account for all of you. However, Holder may release any of you from your obligations under this Agreement without releasing the remainder of you from your obligations.

If the Account is canceled or terminated for any reason, you will not be entitled to a refund of or a credit for any initial annual fees or other fees and charges payable under the Account, unless otherwise required by applicable law. In addition, you must return to Holder the Checks, Credit Cards, and any other devices you may have to access the Account. Any further use of such devices may be considered fraudulent. Regardless of such cancellation or termination, you will remain obligated to repay the Account Balance in full, including any money advanced to you after the Account has been canceled or terminated.

### 18. LOAN CHARGES

If this Agreement is subject to a law that sets maximum Loan charges, and that law is finally interpreted so that the

Loan No: 

## 19. SEVERABILITY

In the event that any provision or clause of this Agreement or the Security Instrument conflicts with applicable federal, state, or local law, such provision or clause will be considered changed to the extent permissible and necessary to comply with such law. Otherwise, such conflict will not affect other provisions of this Agreement or the Security Instrument that can be given effect without the conflicting provision.

## 20. YOUR BILLING RIGHTS-KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and Holder's responsibilities under the Fair Credit Billing Act.

### Notify Holder In Case of Errors or Questions About Your Bill

If you think the Billing Statement is wrong, or if you need more information about a transaction on the Billing Statement, write Holder at the address listed on the Billing Statement. Write to Holder as soon as possible. Holder must hear from you no later than 60 days after Holder sent you the first Billing Statement on which the error or problem appeared. You can telephone Holder, but doing so will not preserve your rights.
In your letter, give Holder the following information:
  (A) Your name and account number.
  (B) The dollar amount of the suspected error.
  (C) Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized Holder to pay the Account automatically from your savings, checking, or other account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach Holder three business days before the automatic payment is scheduled to occur.

### Your Rights and Holder's Responsibilities After Holder Receives Your Written Notice

Holder must acknowledge your letter within 30 days, unless Holder has corrected the error by then. Within 90 days, Holder must either correct the error or explain why Holder believes the Billing Statement was correct.

After Holder receives your letter, Holder cannot try to collect any amount you question or report you as delinquent. Holder can continue to bill you for the amount you question, including **FINANCE CHARGES**, and Holder can apply any unpaid amount against the Credit Limit. You do not have to pay any questioned amount while Holder is investigating, but you are still obligated to pay the parts of the Billing Statement that are not in question.

If Holder finds that Holder made a mistake on the Billing Statement, you will not have to pay any **FINANCE CHARGES** related to any questioned amount. If Holder did not make a mistake, you may have to pay **FINANCE CHARGES**, and you will have to make up any missed payments on the questioned amount. In either case, Holder will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that Holder thinks you owe, Holder may report you as delinquent. However, if Holder's explanation does not satisfy you and you write to Holder within ten days telling Holder that you still refuse to pay, Holder must tell anyone Holder reports you to that you have a question about the Billing Statement, and Holder must tell you the name of anyone Holder reported you to. Holder must tell anyone Holder reports you to that the matter has been settled between you and Holder when it finally is.

If Holder does not follow these rules, Holder can't collect the first $ 50.00 of the questioned amount, even if the Billing Statement was correct.

### Special Rule for Credit Card Purchases

If you have a problem with the quality of property or services that you purchased with the Credit Card and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:
  (A) You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and
  (B) The purchase price must have been more than $ 50.00.

These limitations do not apply if Holder owns or operates the merchant or if Holder mailed you the advertisement for the property or services.

## 21. LIABILITY FOR UNAUTHORIZED USE OF A CREDIT CARD

You may be liable for the unauthorized use of the Credit Card. You will not be liable for unauthorized use that occurs

Loan No: 

By signing below, you agree to the terms of this Agreement. You also acknowledge and agree that you received a completed copy of this Agreement.

You understand that during the Draw Period your minimum monthly payments will not reduce the unpaid principal of the Loans. After 24 years if you have only made minimum payments, your unpaid principal of the Loans will not be reduced. During the Repayment Period your Minimum Monthly Repayment Period Payments will increase because they will consist of accrued FINANCE CHARGES and credit insurance premiums plus principal unless you have prepaid any portion of the Account Balance.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
ERIC BEELARD                    -Borrower

_____ (Seal)
JESSICA SALVI                   -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

# ALLONGE

LOAN #: ~~205~~

Borrower(s): ERIC BEELARD, JESSICA SALVI

Property Address: 1011 HILLSIDE BOULEVARD, SOUTH SAN FRANCISCO, CALIFORNIA 94080

Principal Balance: $50,000.00

Loan Date: AUGUST 16, 2005

PAY TO THE ORDER OF

RESIDENTIAL FUNDING CORPORATION

Without Recourse

Company Name: HOMEFIELD FINANCIAL, INC.

By: _____
     (Name)                                    (Title)

Scott Laughlin
Manager of Capital Markets

PAY TO THE ORDER OF
JP MORGAN CHASE BANK,
AS INDENTURE TRUSTEE
WITHOUT RECOURSE
Residential Funding Corporation

BY _____
Judy Faber, Vice President

Without Recourse, Pay to the order of
Coltate Capital L.L.C.

_____
Steven Groen, Limited Signing Officer
The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank, N.A. as Indenture Trustee, Residential Funding Company, LLC fka Residential Funding Corporation, Attorney in Fact

Without Recourse, Pay to the order of
HERITAGE PACIFIC FINANCIAL, LLC d/b/a
HERITAGE PACIFIC FINANCIAL

_____
Greg S. Conrady, Manager
Coltate Capital, L.L.C